**08 C 1220**

**JUDGE MORAN**
**MAGISTRATE JUDGE MASON**

# EXHIBIT 1

100 Rs.



# TRADEMARK LICENSE AND REGISTERED USER AGREEMENT

## (PAPERMATE AND LIQUID PAPER)

DATED MARCH ___26___ ,2002

BETWEEN

BEROL CORPORATION

AND

LUXOR WRITING INSTRUMENTS PRIVATE LIMITED

## TRADEMARK LICENSE AND REGISTERED USER AGREEMENT

THIS AGREEMENT is made this 22nd day of March, 2002 ('Effective Date') by and between Berol Corporation ('Proprietor'), organized and existing under the laws of the State of Illinois, having its principal place of business at 29 East Stephenson Street, Freeport, Illinois U.S.A.

and

Luxor Writing Instruments Private Limited, a company registered under the Companies Act, 1956 and having its registered office at No. 5, Okhla Industrial Estate, New Delhi–110 020, India (hereinafter called the 'User' which expression includes its permitted successors and assigns, if any).

Berol and Luxor are together referred to as 'Parties' and individually as 'Party' in this Agreement.

**WHEREAS:**

A.   The Proprietor represents that it is or has applied to become the registered owner of the Trademarks identified in Schedule A hereto, and has exclusive rights in the Trademarks. (The trademarks in the Schedule are hereinafter each called a 'Trademark,' which term shall be deemed to include any further Trademarks which the Parties may from time to time agree upon in a writing signed by both Parties as additions to the said Schedule A.)

B.   The User and the Proprietor desire that the User shall be permitted to use each Trademark only in India (hereinafter called 'the Territory') and in relation to the products expressly authorized by Proprietor for sale by User within the categories of products specified in relation to each Trademark in Exhibit A (each of such products, hereinafter, the 'Goods').

NOW, THEREFORE, in consideration of the premises, mutual promises and covenants set forth hereinafter, the Parties hereto agree as follows:

1.    Proprietor's "Affiliates" are those companies controlled by, controlling, or under common control with Berol Corporation, including without limitation, Parker Pen Products and Parker Pen Company.

2.    (a)    The Proprietor hereby grants to the User for the Term of this Agreement an exclusive right and license to use the Trademarks in the Territory on the Goods, in relation to its business of manufacture, sale, marketing and distribution of the Goods.

      (b)    During the Term of this Agreement, Proprietor shall make available for review its displays, point-of-sale devices, catalogs and sell sheets for the Goods sold under the Trademarks, with the opportunity for sampling or purchase of such materials by User to be addressed between the parties on a case-by-case basis.

3.    The "Term" of this Agreement means six (6) years from the Effective Date written above.

4.    (a)    Provided that User is not in breach of this Agreement at the end of the Term, this Agreement shall be renewed for a second six (6) year Term beginning on the sixth anniversary of the Effective Date written above.

      (b)    Proprietor reserves the right not to renew this Agreement for the second six (6) year Term specified in Section 4(a), or to cancel (other than for material breach) this Agreement any time during the second term.  Proprietor shall exercise this right by notifying User of its intention (i) not to renew this Agreement no less than one hundred eighty (180) days before the sixth anniversary of the Effective Date, or (ii) to cancel (other than for material breach) this Agreement by giving one hundred eighty (180) days notice, and, in both

2

cases, by tendering to User, at the end of that period of one hundred eighty (180) days, the sum of ten million U.S. dollars (US$10,000,000.00).

In the event of termination, in the second six year Term of this Agreement (as set forth in this Section), of the Supply Agreement (as defined herein), the Technical Know-How Agreement (as defined herein), or this Agreement, for any reason other than for a material breach of any of the said Agreements by User or User's bankruptcy, User shall be entitled to the compensation of the amount set forth in this Section.

(c)    After the second six year Term specified in Section 4(a), this Agreement may be renewed for one or more subsequent six (6) year Terms only upon written agreement of the Parties, it being expressly understood and agreed by the Parties that neither Party shall be obligated to enter into any agreement for such subsequent terms, and that neither Party may claim any breach or damages if the other Party does not offer, accept, negotiate, or agree to any such subsequent terms.

5.    The User undertakes to manufacture (or have manufactured for it, pursuant to the terms hereof) the Goods and the packaging for the Goods in strict accordance with the standards of quality, processes, manufacturing techniques, directions, information and any specifications prescribed by the Proprietor (or, in the case of Goods distributed by User prior to the Effective Date, Proprietor's predecessor in interest in and to the Trademarks) or the Proprietor's authorized representative from time to time and to use each Trademark only upon or in relation to such Goods. In no event shall the quality of User's Goods sold under any Trademark be lower than the quality of the Goods sold by Proprietor under the corresponding Trademark outside the Territory, unless Proprietor consents to such lower quality in writing. User shall not use the Trademarks other than on specific Goods approved in writing by the Proprietor within the categories set forth in Schedule

3

A, unless Proprietor otherwise expressly consents in writing to the use of the Trademarks on products other than the Goods.

Proprietor hereby consents to the User continuing to manufacture and distribute Goods manufactured and distributed in accordance with the standards of quality, processes, manufacturing techniques, directions, information and any specifications prescribed by the Proprietor's predecessor.

6.  The User shall mark all packaging for Goods bearing a Trademark "FOR SALE ONLY IN INDIA." Such marking shall be in an easily readable typeface and a location prominent to consumers at the time of purchase.

7.  The rights granted by the Proprietor to the User hereunder are personal to the User and the User shall be the sole manufacturer of the Goods (with the exception of Goods supplied as finished products by Proprietor or one of Proprietor's Affiliates).

If the packaging for the Goods to be sold under any Trademark is to be manufactured for the User by a third party supplier of User (a "Supplier"), User shall notify Proprietor of the identity of each such Supplier. User and its Supplier shall then enter into a "Supplier Agreement" as shown in Exhibit B, which Supplier Agreement shall not be effective until Proprietor has indicated its approval of such Agreement. Proprietor's approval of a Supplier Agreement shall not be unreasonably withheld, but Proprietor retains the right to object to any Supplier Agreement on any reasonable basis. If Proprietor fails to disapprove of a Supplier within thirty (30) days of notice of the Supplier by User, that Supplier shall be deemed approved.

Contemporaneously with this document, User shall deliver Supplier Agreements for each of the Suppliers who is presently making packaging for User with a Trademark. Each such Supplier shall be deemed approved unless Proprietor,

4

before the signing of this Agreement, has disapproved of the Supplier on any reasonable basis, which shall be communicated to User.

It is understood that any breach of a Supplier Agreement by a Supplier shall constitute a material breach by User of this Agreement. In the event of any such breach, User shall terminate the affected Supplier Agreement and shall take such other legal action against the Supplier as to cause Supplier to cease its use of Proprietor's Trademarks and any of them. It is understood that the termination of a Supplier within seven (7) days of notice from Proprietor under this Section shall be deemed a cure of User's breach under this Section.

8. Prior to any distribution of the Goods the User shall submit samples of finished units of the Goods including packaging and labels to the Proprietor or its authorized representative. The User shall not commence distribution of the Goods until the User has received the approval of the Proprietor or its authorized representative to such samples. If any of the Goods or packaging for the Goods are not approved, the Proprietor or its authorized representative shall so inform the User and the User shall not thereafter use the Trademarks upon or in relation to any of the Goods or packaging so held not to conform and shall withdraw from the course of manufacture or from their distributors or stocking retailers or from the market any such Goods or packaging. If Proprietor fails to disapprove of Goods or packaging within thirty (30) days of notice and submission of same by User, the submitted materials shall be deemed approved. If disapproved, the User shall have the opportunity to remedy such defects but shall not thereafter recommence distribution of the Goods until the Proprietor or its authorized representative is satisfied that the Goods and packaging for the Goods comply in all respects with the standards of quality and the like specified in Section 5 of this Agreement and has informed the User in writing that it may recommence distribution.

5

It is agreed and understood between the Parties that special imprints on previously approved Goods, or color variations of same, do not require resubmission and approval under this Section. It is also understood and agreed that Goods being manufactured and/or sold by User as of the Effective Date are deemed approved by Proprietor under this Section.

9.   The User recognizes the Proprietor's title to and the validity of the Trademarks and shall not at any time do or suffer to be done any act or thing which may in any way impair the rights of the Proprietor in and to the Trademarks or the validity thereof. In particular, but without prejudice to the generality of the foregoing, the User (a) undertakes not to use the Trademarks in any manner that may jeopardize the distinctiveness or validity of the trademarks, (b) shall apply and use the Trademarks only on or in connection with such Goods, and only in such form and manner, as the Proprietor or its authorized representative may from time to time direct or approve, and (c) shall cause the labels, containers, packaging, pamphlets, advertisements and the like used in connection with the Goods to show the Trademarks in such a manner and with such lettering and marking as may be so directed or approved by the Proprietor or its authorized representative from time to time.

10.  It is understood that the User shall not acquire, and the User acknowledges and undertakes that it will not claim, during the life of this Agreement or thereafter, to have acquired any title in and to any of the Trademarks that is adverse to the Proprietor by virtue of the rights hereby granted to the User, or through use by the User of the Trademarks pursuant to this Agreement. All use of the Trademarks by the User shall at all times inure to the sole and exclusive benefit of the Proprietor, and that all title and property in each of the Trademarks shall continue at all times to vest solely and absolutely in the Proprietor.

11.  It is understood and agreed between the Parties that any application that may have been filed by the User, prior to the date of this Agreement, for registration of any

6

Trademark, including any deceptive or confusing variations thereof, shall be deemed to have been filed on behalf of the Proprietor, and the User hereby undertakes to assign the same to the Proprietor. The covenant contained in this Section 11 shall survive the termination of this Agreement.

12.    The User further undertakes that it will not during the life of this Agreement or at any time thereafter:

(a)    authorize, assist or knowingly allow the use of any of the Trademarks by any third party of any products, services, product packaging or in advertising.

(b)    apply, use or seek to register in relation to the Goods or in relation to any other goods, services or trade, any of the Trademarks or any mark, name, word, logo or device in any alphabet, script or language calculated or in any way likely to cause confusion or deception by comparison with any of the Trademarks whether in India or in any other country.

(c)    apply, use or seek to register any trade name or company name, in any language or script, which would cause confusion or deception with regard to the Proprietor's name and the Trademarks.

(d)    dispute or question the Proprietor's ownership of or the validity of the Trademarks and/or do or suffer to be done any act or thing which may in any way impair the rights of the Proprietor in and to the Trademarks or the distinctiveness or validity thereof and/or allege that the trademarks have ceased to be distinctive of the Goods of the Proprietor and/or that there has ceased to be a connection in the course of trade between the Goods and the Proprietor and/or otherwise set up any claim in or to the Trademarks adverse to that of the Proprietor. In particular, the User hereby covenants and undertakes that it shall not apply for rectification or cancellation of the registration of the Trademarks or any of them on any ground and that it will not counsel, procure or assist any other party to take such action.

7

13. In the event that the User becomes aware of any act of infringement or threatened infringement of the Trademarks, or any misuse of the Trademarks or any act of passing-off or unfair competition by any third party in relation to Goods of the User or the Proprietor which bear any of the Trademarks, which is detrimental to the reputation of the Proprietor or of the Trademarks, the User shall promptly notify the Proprietor of such act.

14. The User shall be free to take legal action against any such act only with the prior written consent of the Proprietor which the Proprietor shall not unreasonably withhold in the event of any such act which adversely affects the User's business. The Proprietor reserves the right however, to take action in its own name alone (in which case the User shall fully co-ordinate with the Proprietor in assisting in such action at the request and expense of the Proprietor) or to join in any action taken or to be taken by the User.

15. The Proprietor and the User shall jointly apply for the registration of the User under the provisions of the Trade Marks Act, 1999 or any other relevant trademark laws of India in effect at the time, as a Registered User of the Trademarks and shall do all such acts and thing as may be reasonably necessary to secure such registration on the terms of this Agreement and any renewal thereof. The Proprietor and the User also shall jointly apply to cancel any applications relating to User's use of the Trademarks that now may be pending under licenses granted by the Proprietor's predecessors and the termination of all other registered user agreements presently registered be intimated to the Registrar of Trademarks. The User expressly undertakes that it will not and that it officers and servants shall not fail or neglect to do any act or thing or sign any document which is necessary or advantageous for obtaining the said registration and any renewal thereof as promptly as possible. The registration proceedings, as aforesaid, shall be conducted by such Trademark Attorneys as the Proprietor may nominate and the costs of such registration proceedings shall be borne by the Proprietor.

8

16. In the event that User commits a material breach of any of the terms of this Agreement, it shall be lawful for the Proprietor to terminate this Agreement by giving written notice to the User specifying the grounds therefor. User shall have thirty (30) days from the date of Proprietor's notice to cure such breach, and to notify Proprietor in writing that such breach has been cured. If User fails to cure such breach within thirty (30) days from the date of Proprietor's notice (or if such breach is not curable within thirty (30) days, to take such steps as possible to cure such breach as quickly as possible), or fails to notify Proprietor of same, this Agreement shall be terminated as of the end of such thirty (30) day period. User undertakes that in the event of termination, it shall cease to use the Trademarks.

17. (a)    Termination of the Luxor Supply Agreement dated March 22, 2002 made between Parker Sanford, L.P. and Luxor Writing Instruments Private Limited (the 'Supply Agreement') shall entitle the Proprietor to terminate this Agreement by written notice with immediate effect.

   (b)    Termination of the Technical Know-How And Assistance Agreement dated March 22, 2002 made between Berol Corporation and Luxor (the 'Technical Know-How Agreement') shall entitle the Proprietor to terminate this Agreement by written notice with immediate effect.

18. This Agreement may be terminated with the mutual written agreement of the Parties.

19. Upon termination of this Agreement for whatever reason:

   (a) the User shall forthwith cease use of the Trademarks and hereby consents to the cancellation of the User's registration as a Registered User and thereby undertakes to execute forthwith upon request by the Proprietor or its authorized representative any document necessary for that purpose.

9

(b)  the User shall not thereafter apply, use or seek to register in relation to the Goods or in relation to any other goods, services or trade, any of the Trademarks or any mark, name, word, logo or device in any alphabet, script or language calculated or in any way likely to cause confusion or deception by comparison with any of the Trademarks or to otherwise breach the undertakings given in this Agreement.

(c)  apply, use or seek to register any trade name or company name in any language or script, which would cause confusion or deception with regard to the Proprietor's name and the Trademarks.

(d)  the User shall not thereafter continue to refer to or imply (in whatever manner or form) any past or continuing connection in the course of trade between the Proprietor and the User or the User's Goods or Trademarks and shall consent to the publication of such notices, advertisements or announcements as the Proprietor shall so direct for the purpose of informing the trade and/or the public at large that the relationship between the Parties hereto has terminated.

20.  (a) Upon termination of this Agreement the Proprietor shall be entitled to acquire and remove, and the User shall at the Proprietor's request promptly deliver to the Proprietor or its authorized representative or nominee, all stamps, molds, equipment, and dies owned or used by or on behalf of the User, in the possession of the User or under their control or in the possession of any Supplier, which include the Trademarks, together with all materials, containers, packaging, labels, promotional and advertising articles and finished Goods that bear the Trademarks and which are in the possession of, held on behalf of, or in transit to the User.

(b)  Within sixty (60) days of delivery of such materials to Proprietor, Proprietor shall reimburse to the User an amount equal to the out-of-pocket costs (less depreciation) of such stamps, molds, dies, equipment, materials, containers,

10

packaging, labels, promotional and advertising articles ('Specialty Items') that have been delivered to the Proprietor or its authorized representative or nominee pursuant to this Section, *provided that:*

      (i)      such materials were acquired by User within the thirty months preceding the date of termination, and not after notice of termination has been sent to User; and,

      (ii)      only to the extent that such materials cannot be used or reasonably adapted by User to be used with other stationery products; and,

      (iii)      if the purchase or other price of such Specialty Items was more than two hundred thousand U.S. dollars, User gave Proprietor thirty days written notice of the proposed purchase of such Specialty Items by User and such purchase was not disapproved by Proprietor within such thirty day period.

(c)  It is understood and agreed by the Parties hereto that in the event of termination of this Agreement under Sections 16 or 17 of this Agreement, the Proprietor shall have no obligation whatsoever to reimburse or otherwise compensate the User in whole or in part for its capital or labor investment undertaken in connection with the manufacture, storage or distribution of the Goods, including without limitation its investment in the equipment included among the Specialty Items, machinery, fixtures, other personal or real property or any improvements thereto and personnel employed by the User to engage in the manufacture, handling, storage or distribution of the Goods or any expense incurred by the User for promoting the Goods or to pay damages to or compensate the User in any other way whatsoever, subject as hereinbefore provided.

(d)  Termination of this Agreement in whatever circumstances shall be without prejudice to the rights and claims of either Party hereto in respect of any antecedent breach of the terms of this Agreement.

(e)  It is specifically acknowledged and agreed by the User that Sections 10, 12 and 19 of this Agreement and sub-sections (a), (b) and (c) of this Section 20 will remain binding on the User despite termination of this Agreement for whatever cause and in whatever circumstances.  Each of the obligations contained in the aforesaid Sections 10, 12 and 19 and in sub-sections (a), (b) and (c) of this Section 20 shall be deemed to be a separate covenant by the User, and the Proprietor shall be entitled to obtain ex parte interlocutory relief and a permanent order for specific performance of the terms and conditions of the said sections and sub-sections and/or for an injunction against any breach or continued breach thereof by the User or an injunction to enforce the covenants contained therein, and   to get a Receiver appointed of the Goods and articles mentioned in the various sub-sections of this Section 20.

21.    It is agreed between the Parties hereto that the terms herein contained are all the terms agreed between the Parties with respect to licensing of Proprietor's trademarks, and the User shall not be entitled to plead any other agreement(s), arrangement or understanding of any nature which have been in force prior hereto.  It is agreed that the terms herein shall be varied or altered or modified only in writing signed by the Proprietor or its authorized representative and by the User.

22.    Notices or other written communications required or permitted hereunder shall be sent by a commercial courier for the fastest method of delivery and providing written confirmation of delivery (such as Federal Express or DHL) addressed to the representative addressee, which shall be deemed received seven (7) days after delivery to the courier:

If to Proprietor, to:

> Sanford, L.P.
> 2711 Washington Blvd.
> Bellwood, Illinois, USA 60104
> Attn: President

With a copy to:

> Newell Rubbermaid Legal Services
> 6833 Stalter Drive
> Rockford, Illinois, USA 61108
> Attn: General Counsel

If to Luxor, to:

> Luxor Writing Instruments Private Limited
> No. 229, Okhla Industrial Estate, Phase III
> New Delhi–110 020
>
> Attn. Mr. D.K. Jain
> with a copy to Ms. Pooja Jain at the same address

If requested by a party, a courtesy copy of any such notice may be sent by facsimile to the number indicated by the requesting party. Such notice also may be provided to a Party at such other address as shall be furnished in writing by User or the Proprietor.

23.    No royalty or other remuneration is payable by the User to the Proprietor for the rights granted to the User under this Agreement, the only consideration being the mutual covenants and obligations entered into by the User and the Proprietor.

24.    (a)    User shall indemnify and hold harmless Proprietor and its Affiliates, and any of their agents, officers, directors, and employees from and against any liability, claim, administrative action, cause of action, suit, damages, and expenses (including reasonable attorney fees and costs) including but not limited to any damages for personal injuries, including death and property damage, which result from User's any consumer's use or possession of Products; provided this

13

indemnification obligation shall not be construed to co-extend with or impede the indemnification obligations of Proprietor under Section 24(b).

(b)      Proprietor shall indemnify and hold harmless User and its agents, officers, directors, and employees from and against any liability, claim, administrative action, cause of action, suit, damages, and expenses (including reasonable attorney fees and costs) which result from User's use of any of the Trademarks in accordance with the terms of this Agreement and the specifications of Proprietor, which has been finally held by the ultimate appropriate appellate authority to infringe a trade mark of a third party.  The User shall within thirty (30) days of receipt of any claims, demand, actions, suits or proceedings referred to in this Section 24(b), give in writing a notice to Proprietor of any such claims, demands, actions, suits and proceedings.  Proprietor shall have the sole charge and direction of the defense thereof, and the User shall render all reasonable assistance in connection therewith to Proprietor.  If as a result of such suit or settlement a Trademark is found to infringe and its use is enjoined, Proprietor shall, at its election and expense: (a) procure for User the right to continue using the Trademark for the remainder of the current term of this Agreement, or (b) pay the portion of User's reasonable expenses that are incurred as a result of the early termination of the right to use such Trademark and that relate to the removal/change of the infringing Trademark on the Goods and related tools.

25.      User shall not assign or otherwise transfer this Agreement without the prior express written permission of Proprietor.  Any purported assignment or transfer, including by operation of law or by merger, shall be null and void.

26.      User shall not assign or otherwise transfer this Agreement without the prior express written permission of Proprietor.  Any purported assignment or transfer, including by operation of law or by merger, shall be null and void.  Any assignment by Proprietor shall not materially change the rights of the User hereunder, and shall be with notice to User.

14

27.   This Agreement shall be interpreted in accordance with the laws of the State of Illinois and the United States of America.  Each Party irrevocably consents and submits to the jurisdiction of the courts of the United States of America, and the respective States comprising the United States of America, to interpret and enforce this Agreement.  Any dispute arising under this Agreement shall be adjudicated in the United States District Court located in Chicago, Illinois, USA, and if that court is without subject matter jurisdiction over a dispute, then that dispute shall be adjudicated in the Circuit Court of Cook County, Illinois, located in Chicago, Illinois, USA; and each Party irrevocably consents to such venue for adjudicating any such dispute, and agrees not to seek any change of venue for any reason.  Each Party also agrees that the final adjudication of any such dispute by such courts, following final disposition of any appeals by either Party, shall be enforceable according to its terms in the courts of India or any of its states.

[THIS SPACE INTENTIONALLY LEFT BLANK]

15

28.    It is agreed and understood between the Parties that any license granted by Proprietor or its predecessor in interest to the Trademarks, which permitted User to enjoy the use of any of the Trademarks before the Effective Date, shall be deemed to have extended up to and including the Effective Date, and to have been granted by Proprietor, and that no use of the Trademarks prior to the Effective Date shall be considered to have been unlicensed by the owner of such Trademarks.

AS WITNESS the hands of the duly authorized officers of the Parties hereto on the day and year first before written.

For **BEROL CORPORATION**

**(PROPRIETOR)**

For **LUXOR WRITING INSTRUMENTS PRIVATE LIMITED**

**(USER)**

## SCHEDULE A

### Trademarks and Possible Goods

**The "Paper Mate" Group of Trademarks**

| Trademark | Class | Country | App. Date | App. No. | Reg. No |
|---|---|---|---|---|---|
| PAPER MATE | 16 | India | 05-Jan-1954 | 162231 | 162231 |
| PAPER MATE & DOUBLE HEARTS DEVICE | 16 | India | 15-Mar-1984 | 419208 | 419208 |
| DOUBLE HEARTS DEVICE | 16 | India | 22-Aug-1958 | 186567 | 186567 |
| COMFORT MATE & HEART DEVICE | 16 | India | 05-Aug-1996 | 712350 | |
| SOFT TOUCH | | | | | |
| FLEXGRIP | 16 | India | 19-Jan-1995 | 652609 | |
| DYNAGRIP | 16 | India | 08-Nov-1996 | 720590 | |
| DYNAGRIP-RT-10 and RT-30 | | | | | |
| ERASER.MAX | 16 | India | 20-Apr-1999 | 852193 | |
| KILOMETRIC | 16 | India | 15-Mar-1984 | 419211 | 419211 |
| KILOMETRIC PLUS | | | | | |
| REPLAY | 16 | India | 05-Feb-1980 | 358213 | 358213 |
| GEL GLIDE | | | | | |
| LUBRIGLIDE | 16 | India | 10-Dec-1996 | 724016 | |
| SILK WRITER | 16 | India | 30-Sep-1999 | 879326 | |
| WIDEMATE | 16 | India | 11-Nov-1999 | 886191 | |
| GEL.MAX | 16 | India | 04-Jul-2000 | 936626 | |
| GELSTICK | 16 | India | 05-Jul-1999 | 863966 | |

The Paper Mate Group of Trademarks scheduled here may be used only on writing instruments, and packaging and accessories therefor, which are approved in writing by the Proprietor. Other Proprietor trademarks and products that are introduced after the date of the Agreement may be added to this schedule, but only as agreed in writing by the parties.

17

**The "Liquid Paper Group" of Trademarks**

| Trademark | Class | Country | App. Date | App. No. | Reg. No. |
|---|---|---|---|---|---|
| LIQUID PAPER | | | | | |
| LIQUID PAPER-CORRECTION PEN DEVICE | | | | | |
| LIQUID PAPER AND DROPLET DEVICE | 16 | India | 13-Feb-1995 | 655233 | |
| LIQUID PAPER AUTOCORRECT | 16 | India | 13-Jan-2000 | 897701 | |

The Liquid Paper Group of Trademarks scheduled here may be used only on writing instruments, and packaging and accessories therefor, which are approved in writing by the Proprietor. Other Proprietor trademarks and products that are introduced after the date of the Agreement may be added to this schedule, but only as agreed in writing by the parties.

18

EXHIBIT B
FORM OF SUPPLIER AGREEMENT

This Supplier's Agreement is made pursuant to the Trademark License And Registered User Agreement between Berol Corporation ('Proprietor') and the Luxor Writing Instruments Private Limited ('Luxor'), a copy of which is attached hereto and made apart hereof ('License Agreement').

_____ (full name) located at [address] ('Supplier') desires to manufacture the following items bearing one or more of the Trademarks:   [insert list of items to be manufactured] ('Items').

Such  Items shall be manufactured only at:  [insert address of manufacturing facility]

As a condition to the manufacture by Manufacturer of any such Items bearing the Trademarks, Supplier acknowledges that the Trademarks are the sole property of Proprietor, and that Supplier's right to manufacture the Items with the Trademarks thereon is in all respects subject to the terms and conditions in the License Agreement.

Supplier agrees that the provisions of the License Agreement shall take precedence over and supersede any and all contractual relationships between Luxor and Supplier, and, in particular, Supplier recognizes that all manufacturing rights are subject to (a) the restrictions on the use of the Trademarks found in the License Agreement, and (b) the termination provisions in the License Agreement.  Supplier further acknowledges that its manufacture of the Licensed Goods shall give Supplier no right to use the Trademarks to sell Items (or any other article, product, or good) bearing the Trademarks beyond the term of the License Agreement.

Supplier shall not sell Items (or any other article, product, or good) bearing the Trademarks to any person or entity except Luxor.

Supplier acknowledges that all manufacturing rights cease immediately upon the termination or expiration of the License Agreement or Luxor's termination of Supplier for any reason.

Supplier acknowledges that its agreement to the terms hereof is consideration for Luxor's agreement to contract for the manufacture and purchase of Items from Supplier.

LUXOR WRITING INSTRUMENTS
        PRIVATE LIMITED:                    [SUPPLIER NAME]:


By:_____          By:_____

Its:_____          Its:_____
        Authorized Representative              Authorized Representative

19